UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| TERRY L. ENGSTRAND, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 3:18-CV-100 JD |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

On February 13, 2018, Plaintiff Terry Engstrand filed a complaint [DE 1] in this Court seeking review of the final decision of the Defendant Commissioner of Social Security denying his applications for social security disability benefits.[1] The matter is briefed and ripe for decision [DE 16; DE 19; DE 20; DE 23]. For the reasons stated below, the Court remands this matter to the Commissioner for further proceedings.

## I. FACTS

Since 1978, Engstrand has performed very heavy exertional work as either a maintenance supervisor, landscaper, or farm laborer. By the year 2000, he had already undergone two back surgeries as a result. By December 28, 2013, Engstrand claims that he became disabled due to lumbar degenerative disc disease and chronic pain. Administrative Law Judge Kevin Vodak ("the ALJ") disagreed and believed that Engstrand could still perform work as a maintenance

---

[1] Engstrand filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 *et seq.*, while the SSI regulations are set forth at 20 C.F.R. § 416.901 *et seq*. Because the definition of disability and the applicable five-step process of evaluation are identical for both DIB and SSI in all respects relevant to this case, reference will only be made to the regulations applicable to DIB for clarity.

supervisor, not as actually performed, but as generally performed at the light exertional level.[2] However, had the ALJ determined that Engstrand was at most capable of performing sedentary work, then Engstrand would have been automatically deemed disabled by reason of his age of fifty-five and the direct application of Medical-Vocational Rules 201.00(d) and 201.06. After the ALJ issued his decision on January 13, 2017, the Appeals Council denied Engstrand's request for review which made the ALJ's decision the final determination of the Commissioner. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Engstrand seeks review of the Commissioner's decision, thereby invoking this Court's jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

The ALJ set forth a chronology of Engstrand's extensive medical records with respect to his various physical impairments, including degenerative disc disease, obesity, coronary artery disease, cervical pain, hypertension, and hyperlipidemia (Tr. 21-26). However, most relevant to this appeal, and thus, the focus of this Order, is the ALJ's discounting of Engstrand's claimed severity of his lumbar pain and resulting limitations. Specifically, Engstrand contends that the ALJ's errors in assessing his credibility adversely impacted the residual functional capacity ("RFC")[3] determination; and for that reason, substantial evidence does not support the ALJ's decision that Engstrand has the RFC to perform light work.[4]

---

[2] The Dictionary of Occupational Titles ("DOT") addresses how positions are generally performed; and thus, any argument to the contrary by plaintiff's counsel is without merit. *See Wolfe v. Shalala*, 997 F.2d 321, 323 (7th Cir. 1993); *Johnson v. Colvin*, No. 14-CV-25-BBC, 2014 WL 6982314, at *3 (W.D. Wis. Dec. 10, 2014) (the DOT "provides information as to how a job is generally performed in the national economy"). And even if the DOT is outdated, *see Herrmann v. Colvin*, 772 F.3d 1110, 1113 (7th Cir. 2014), that fact would not affect the outcome of this case.

[3] Residual Functional Capacity is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

[4] Light work requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday, with intermittent sitting; or, involves sitting most of the time with some

In summarizing Engstrand's hearing testimony[5] (Tr. 22-23), the ALJ acknowledged Engstrand's subjective report that his back pain radiates to his buttocks, legs, and ankles, and that it has progressed over time, thereby causing sleep deprivation and concentration problems. Pain medication only took the "edge off," and Engstrand rated his pain level as a six on a ten-point pain scale. Engstrand reported that he could only walk about half of a block before needing to stop and stretch, and he could only stand long enough to wash five dishes. The ALJ also indicated that Engstrand's typical day was limited to showering, making simple meals, watching television, walking or exercising (some), playing boardgames, and using an ice pack on his back.

The ALJ opined that Engstrand's "statements and hearing testimony regarding the severity and limiting effects of his impairments [were] partially consistent with the totality of the objective medical record." (Tr. at 26-27). In finding Engstrand to be less than fully credible, the ALJ specifically referred to a medical report from December 2015 which documented Engstrand's report of "well controlled" pain, accompanied by a recommendation that Engstrand needed to "stay as active as possible." As a further basis for discounting Engstrand's testimony, the ALJ relied on normal musculoskeletal exam findings from October 2014, March 2015, and June 2015. The ALJ also referred to Engstrand's having "some history of noncompliance with [his] treatment regimen," as a basis for not entirely believing his allegations of disabling pain.

Reviewing state agents opined that as of June and September 2014, Engstrand could perform work at the light exertional level (Tr. 69-93). Accordingly, Engstrand's applications were denied initially and on reconsideration.

---

pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b); SSR 83-10; *Haynes v. Barnhart*, 416 F.3d 621, 627 n. 1 (7th Cir. 2005).

[5] A hearing was held before the ALJ on October 17, 2016, during which, testimony was provided by Engstrand and a vocational expert ("VE").

3

Thereafter, in 2016, both a treating pain doctor and a physical therapist of Engstrand's reported that Engstrand suffered from pain and resulting limitations that prevented him from standing, walking, and sitting long enough to perform light exertional work (Tr. 514-618).

Despite this evidence, the ALJ posed a hypothetical to the VE premised on the ALJ's ultimate RFC conclusion, which offered an assigned RFC of light work, limited by various exertional and environmental limitations, including the ability to sit for up to three minutes every hour, then return to standing/walking (Tr. at 59-67). Per the VE, with this RFC in mind, Engstrand would be able to perform his past work as a maintenance supervisor, as generally performed at the light exertional level. The VE's testimony served as the basis for the ALJ's denial of benefits.

## II. STANDARD OF REVIEW

This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both

the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to the ALJ's findings. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. DISCUSSION

Disability and supplemental insurance benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must assess the claimant's RFC, which, in turn, is used to determine whether the claimant can perform his past work under step four and whether the claimant can perform other work in society at step five of the analysis. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In this case, the ALJ did not conduct a step five analysis since he determined that Engstrand was capable of performing his past work as generally performed in the national economy.

Engstrand argues that the RFC is flawed because the ALJ did not properly evaluate his subjective statements or the medical evidence. Engstrand also argues that the ALJ improperly relied on the VE's testimony in finding that he could perform his past relevant work at step four. For the reasons that follow, the Court agrees that remand is required because the RFC analysis was affected by the ALJ's credibility analysis, which itself was not supported by substantial evidence. Given this shortcoming, the Court leaves it to the parties to address any remaining issues on remand.

## IV. ANALYSIS

Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness, the Court will not overturn an ALJ's credibility determination unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). The ALJ's decision must, however, provide specific reasons for the weight given to the individual's symptoms, be

consistent with and supported by the evidence, and must be sufficiently specific or clearly articulated so the individual and any subsequent reviewers can assess how the adjudicator evaluated the symptoms. SSR 16-3p[6] (superseding SSR 96-7p); *see also Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) ("[A]n ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record."). An ALJ's failure to give specific reasons for a credibility finding, supported by substantial evidence, is grounds for remand. *Id.*; *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009). An ALJ also may not ignore evidence. *Myles*, 582 F.3d at 676.

With respect to Engstrand's claimed limitations resulting from his back pain, the ALJ failed to adequately support his evaluation of Engstrand's limitations. First, the ALJ provided the often-criticized boilerplate language to summarily discredit all of Engstrand's subjective complaints, by stating:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 23). This generic language does not explain or direct this reviewing Court to the information relied on by the ALJ in making his credibility determination. *See Pepper,* 712 F.3d at 367–68;

---

[6] The Social Security Administration issued SSR 16-3p, which supersedes SSR 96-7p. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). SSR 96-7p referred to a claimant's "credibility," but SSR 16-3p removed that term in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p, 2016 WL 1119029, at *1. Instead, the ALJs are reminded to "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," as consistent with the regulations. *Id*. Under either SSR version, the outcome in this case would be the same.

7

*see also Bjornson v. Astrue*, 671 F.3d 640, 644–45 (7th Cir. 2012) (noting that an ALJ's finding a claimant to be 'not entirely credible' fails to inform the court of the specific evidence considered in determining the claimant's credibility and fails to link the ALJ's conclusions to the evidence in the record). However, because the ALJ's mere use of boilerplate language does not automatically undermine the ALJ's ultimate conclusion, the Court considers the other information identified by the ALJ as a basis for attempting to justify his credibility determination. *See id.*

In this case, the ALJ discounted Engstrand's allegations regarding the limiting effects of all of his impairments because of perceived inconsistencies with Engstrand's testimony and several specifically identified medical records (Tr. at 26-27). The ALJ also found Engstrand to be less than fully credible because Engstrand had "some history" of treatment noncompliance. *Id*.

First, with regard to the ALJ's reliance on documentation that Engstrand's pain was "fairly well controlled," along with a simultaneous recommendation that Engstrand "stay as active as possible," the ALJ plucked these notations from a single pain management visit in December 2015 (Tr. 500-03). But, as plaintiff's counsel points out, other notations on the same record further specify that "today" the pain was fairly well controlled, and that "right now" the pain was well managed. Moreover, the pain assessment and exam conducted that same day indicate that Engstrand continued to suffer from sleep disturbance, gait disturbance, joint pain, joint stiffness, muscle pain, numbness and tingling, an antalgic gait, and pain with motion. Thus, by omitting discussion of these notations, the ALJ impermissibly "cherry-picked" facts that support a finding of non-disability while ignoring evidence that points to a disability finding. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Moreover, the ALJ's characterization of the

pain as "fairly well controlled" is impermissibly selective (especially given the temporally-limiting notations) and fails to recognize the waxing and waning of symptoms.[7] *See Scrogham v. Colvin*, 765 F. 3d 685, 696 (7th Cir. 2014). In fact, only a few months after the December 2015 office visit, Engstrand sought treatment from a new pain specialist, Dr. Syed Quadri, for his chronic low back pain, wherein Engstrand reported having difficulty walking (Tr. 613). Engstrand also reported to his physical therapist in February that he was currently suffering from "severe pain" that could be characterized as his having to "put[] off all activities that can be completed another day." (Tr. 548). In March, Engstrand's pain had intensified, and by May, it was still reported that he was having severe pain that impaired his ability to function (Tr. 517, 532). Moreover, while it was recommended that Engstrand "stay as active as possible," there was no specific recommendation for activities that were inconsistent with Engstrand's reported abilities. *See, e.g., Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018) (reasoning that because the examining doctors "did not elaborate on the type, duration, or intensity of the physical activity they would recommend, these medical sources may have had in mind activity that was within [claimant's] alleged limits"). Accordingly, this particular medical record from December 2015 did not supply the ALJ a sufficient basis to reject Engstrand's testimony concerning the severity of his pain and limitations.

Next, the ALJ claimed that medical records from Engstrand's primary care physician undermined Engstrand's testimony because normal musculoskeletal exam findings were documented in October 2014, March 2015, and June 2015. But the ALJ failed to recognize the

---

[7] Even the ALJ was aware of medical notes from February 2014, supporting Engstrand's complaint of constant pain that waxed and waned in intensity over time (Tr. 24, citing Tr. 432), and from September 2013, indicating that Engstrand's lower back pain had improved only after not working for almost nine months (Tr. 24, citing Tr. 384).

9

limited value of these sporadic normal exam findings, when two of the three office visits relied on by the ALJ involved notations that were made in the context of examinations wholly unrelated to Engstrand's back pain. Instead, Engstrand presented for treatment in October 2014, to have his cholesterol checked (Tr. 493), and in June 2015, he sought medical care for a cut on his right index finger that had become infected (Tr. 483). In addition, the October 2014 and March 2015 medical records explicitly documented that Engstrand was seeing a separate pain specialist for managing his ongoing back pain (Tr. 488, 493). Even more problematic is the ALJ's reliance on these few records to discount Engstrand's claims without acknowledging the physician's simultaneous notations that Engstrand's "active" problems included lumbar pain and radiculopathy, and without discussing subsequent records indicating a worsening of Engstrand's back pain, particularly in 2016, after Engstrand participated in physical therapy.

Relative to physical therapy, the ALJ also discredited Engstrand's testimony due to his alleged failure to follow through with physical therapy. The ALJ accused Engstrand of being noncompliant with treatment and specifically noted that he had been "discharged from physical therapy for not showing for three scheduled visits." (Tr. 27). However, the ALJ made such a finding without acknowledging that Dr. Quadri, who initially referred Engstrand for physical therapy in March 2016 (Tr. 613-14), deferred that treatment only two months later because it caused Engstrand increased pain (Tr. 612-13). Thus, the ALJ erred in mischaracterizing Engstrand's conduct as "noncompliant" and then holding that against him in evaluating his symptom testimony. *See* SSR 16-3p; *Myles*, 582 F.3d at 677 (stating that "the ALJ was required by Social Security Rulings to consider explanations for instances where [the plaintiff] did not keep up with . . . treatment").

Additionally, the ALJ wholly failed to mention Engstrand's solid work history as it pertained to lending to his credibility. *See Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 724 (2d Cir. 1983) ("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability."). Engstrand has a long history of performing physical labor, and he even attempted to return to work at a lesser capacity because he was "going broke" and needed money to live (Tr. at 45, 58-59). Yet, the ALJ did not discuss Engstrand's work ethic at the time that he discredited Engstrand's reports of pain.

Finally, to the extent that the ALJ summarily found Engstrand's subjective reports as not being entirely consistent with "the totality of the objective medical record," again, this type of generic language does not supply specific enough information to indicate the evidence relied on by the ALJ in making his credibility determination. *See Pepper*, 712 F.3d at 367–68. And although it is clear that the ALJ relied on the state agents' opinions that Engstrand could perform light work, the ALJ did not explain why the medical evidence that post-dated their opinions (as identified herein) did not undermine their assessments, especially when the records demonstrated an intensifying of Engstrand's pain. *See Staggs v. Astrue*, 781 F.Supp.2d 790, 794–96 (S.D. Ind. 2011) (finding that the medical record omitted from review provided "significant substantive evidence" regarding the claimant's medical impairments and that any medical opinion rendered without taking this record into consideration was "incomplete and ineffective.").

Some of that evidence from 2016 included opinions from Engstrand's treating pain doctor and physical therapist which indicated that Engstrand was not able to stand, walk, and sit long enough to perform light exertional work (Tr. 514-618). While the ALJ discounted the therapist's opinion because it was allegedly "unsupported and the basis for [the opinion] . . .

11

unclear" (Tr. at 25), the ALJ drew this conclusion without recognizing that a "detailed narrative report" underlying the therapist's RFC evaluation was "available upon request." (Tr. at 555). And, while the ALJ discounted Dr. Quadri's opinion that Engstrand could not work, the ALJ's doing so merely because the opinion was not consistent "with the record as a whole" or with the "overall objective record" hardly suffices to meet the discussion required under 20 C.F.R. § 404.1527(c)(1)-(5) with respect to treating physician opinions.

As indicated, remand is required (but not an outright award of benefits as requested) because the RFC analysis was affected by the ALJ's credibility analysis, which itself was not supported by substantial evidence. *See Pepper,* 712 F.3d at 367; *Berger*, 516 F.3d at 545; *Rice*, 384 F.3d at 371. An inadequately supported RFC determination prevents the Court from discerning whether the limitations caused by Engstrand's pain (including a loss of concentration) should have been incorporated into the questions posed to the VE. *See Herron v. Shalala,* 19 F.3d 329, 333-34 (7th Cir. 1994) (indicating that an ALJ must explain his analysis of the evidence with enough detail and clarity to permit meaningful review). This is especially important where limiting Engstrand to sedentary work would have resulted in an award of disability benefits. Ultimately, because the ALJ's assessment of Engstrand's RFC is not supported by substantial evidence, the determination cannot stand.[8] 42 U.S.C. § 405(g); SSR 96–8p.

---

[8] Here, the ALJ's insufficiently supported RFC findings led the ALJ to ask hypotheticals of the VE which omitted Engstrand's claimed (and potentially credible) limitations. Ultimately, the VE's testimony cannot be relied upon as an accurate indicator for the type of work that Engstrand could perform, and so, the conclusion reached at step four cannot be affirmed. *See Young v. Barnhart*, 362 F.3d 995, 1003-05 (7th Cir. 2004) (the ALJ must determine the claimant's RFC before performing steps four and five because a flawed RFC typically skews questions posed to the VE); SSR 96-8p.

## V. CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval. *See Cooke v. Jackson Nat'l Life Ins. Co.*, 882 F.3d 630, 631 (7th Cir. 2018).

SO ORDERED.

ENTERED: March 25, 2019

/s/ JON E. DEGUILIO
Judge
United States District Court